# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-460-2** |
| **RAMON ROMAN-MONTANEZ** | : | |
| **a/k/a "Viejo"** | : | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

RAMON ROMAN-MONTANEZ is a danger to the community who has dedicated the better part of a decade and most of his adult life to dealing dangerous drugs that have caused irreparable harm to our community. If the Court wants to know how much concern ROMAN-MONTANEZ has for the lives of the citizens of Philadelphia, the Court need only consider the following recorded call that happened on July 26, 2026. At approximately 3:55 p.m., defendant SANDINO JOSE HIDALGO GENAO spoke on the phone with defendant ROMAN-MONTANEZ about a recent batch of fentanyl that defendant HIDALGO GENAO had provided for the Weymouth DTO. Defendant ROMAN-MONTANEZ said it would be even better if HIDALGO GENAO could make it stronger. Defendant HIDALGO-GENAO replied that if he makes it stronger, it will kill them.

Based on this conduct and his years' long participation in this prolific DTO, on October 22, 2025, a grand jury in the Eastern District of Pennsylvania returned a 41-count indictment charging RAMON ROMAN-MONTANEZ a/k/a "Viejo" and 32 other co-defendants running one of Philadelphia's largest and most entrenched fentanyl and cocaine trafficking operations, centered on the 3100 block of Weymouth Street, from 2016 through 2025.  Defendant ROMAN

1

ROMAN-MONTANEZ is one of the leaders of this drug trafficking organization—the "Weymouth DTO"—as he lives on the block at 3152 Weymouth Street, controls the drug shift schedule, stores drugs-for-sale in his own residence and in the neighboring residence of 3150 Weymouth Street (as well as in other places), oversees the daily street operations of the DTO and makes direct sales personally, and maintains connections with sources of supply.  Defendant ROMAN-MONTANEZ was specifically charged with seven counts: conspiracy to traffic over 400 grams of fentanyl, 500 grams of powder cocaine, and 280 grams of crack cocaine between 2016 and September 2025, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B) (Count One); three counts of distribution of fentanyl, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Counts Fourteen, Seventeen, and Eighteen); and two counts of possession of controlled substances with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C) (Counts Thirty-Six and Thirty-Seven).  Defendant ROMAN-MONTANEZ is also charged with one count of conspiring to sponsor, exhibit, and possess animals for the purposes of an animal fighting venture, in violation of 18 U.S.C. § 371 (Count Forty-One).   He faces a mandatory minimum sentence of 10 years' imprisonment.

Due to the significant amount of fentanyl, cocaine, and crack cocaine underlying the charges, a presumption in favor of detention exists pursuant to the Bail Reform Act.   The defendant cannot overcome that presumption here because—as explained in more depth below—the strength of the government's case, the deadly and addictive nature of the drugs the defendant was distributing, the length of the sentence the defendant faces, and a number of factors about the defendant's background, together demonstrate that the defendant presents a risk of flight and danger to the community such that there is no condition or combination of conditions that will reasonably secure the defendant's presence at trial.  In short, the presumption in favor of

detention cannot be rebutted and the defendant should be detained for his danger to the community and risk of flight.

## I.      OVERVIEW OF INDICTMENT AND "WEYMOUTH DTO"

In support of this motion, the government makes the following representations and proposed findings of fact:

1.      The 41-count indictment in this case charges defendant RAMON ROMAN-MONTANEZ a/k/a "Viejo," along with 32 other co-defendants, with a near decade-long conspiracy to traffic fentanyl, cocaine, and crack cocaine, in Philadelphia, from January 2016 through October 2025.  Specifically, defendant ROMAN-MONTANEZ and his co-defendants were part of the drug trafficking group that has operated primarily on the 3100 block of Weymouth Street, Philadelphia, termed the "Weymouth DTO."

2.      The 3100 block of Weymouth Street has plagued the City of Philadelphia of years, as it has functioned as what is effectively an open-air drug market that operates 24 hours a day, 365 days a year, where addicts can come to buy fentanyl, cocaine, and crack cocaine, up and down the block.  The Weymouth DTO uses multiple occupied and abandoned houses and lots on the block—as well as trash cans, ground drains, cars, tires, and porches—to store small to medium amounts of drugs in easily-accessible places, so they can be procured for buyers who arrive on the block to make drug transactions.  A photograph of the 3100 block of Weymouth Street, taken on April 30, 2024, which was a day that the DTO was handing out free samples of a new product line, is shown below:



3.      In addition to storing drugs in various locations along the 3100 block of Weymouth for daily sales by street dealers, the Weymouth DTO used several off-the-block locations to package and store drugs that are delivered to the block through "reups." Up until August 2025, when the FBI searched both locations, the Weymouth DTO used 6217 Tackawanna Street, in Philadelphia, as a bag-house for fentanyl, and it used a garage at 3326 Rorer Street, in Philadelphia, as a packaging and storage center for crack cocaine. The Weymouth DTO also used a particular lot on the block, at 3153 Weymouth Street, as a meeting place, stash location, and location to cook crack cocaine. The location, called the "bunker," consists of a drywall structure with a physically connected tent structure, with a door in between that can be opened or closed.

4.      Over the course of the FBI and Philadelphia Police Department's investigations in this case, roughly 3.9 kilograms of fentanyl, 727 grams of crack cocaine, and 3.8 kilograms of powder cocaine were seized by law enforcement, either from controlled buys, arrests on the block, or the execution of search warrants. But those amounts—arrived at through tallying up one-moment-in-time snapshots, either of drugs transacted with an individual buyer or drugs

stored in a location for imminent sale—do not *come close* to representing the enormous quantity of illegal drugs sold by this DTO over the 9-year conspiracy charged. A conservative estimate, as the evidence underlying the case will show, is that the Weymouth DTO, for the 9-year conspiracy period charged, trafficked roughly 10-18 kilograms of fentanyl and 16-30 kilograms of crack cocaine, to buyers in Philadelphia.

5. The Weymouth DTO also commited violent assaults, including murders, to maintain control over its drug empire on the 3100 block of Weymouth Street and the surrounding blocks. The indictment describes assaults committed by defendants in this case, such as on November 7, 2024, when defendants JOSUE ONEILL ORTIZ-BETANCOURT and JONATHAN TORRES, along with Co-Conspirator 12 (now deceased) and another individual, chased a car off the 3100 block of Weymouth and repeatedly shot at the car around the corner, while defendant ELLIOT MATTEI-RODRIGUEZ, a/k/a "Elio," pulled out a firearm, chambered a round, and stood guard on the 3100 block of Weymouth. On March 16, 2025, defendants JOHN DAVID LOPEZ-BORIA a/k/a "Grande," LUIS WILLIAMS, and Co-Conspirator 17 physically assaulted an individual on the block, as captured on pole camera. On May 6, 2024, defendant ROMAN ROMAN-MONTANEZ and Co-Conspirator 12, now deceased, dragged an unknown person across the ground in the direction of the "bunker" at 3153 Weymouth Street, after which Co-Conspirator 12 struck the person with a rod.

6. Members of the Weymouth DTO routinely possess firearms, either on their persons but more commonly in vehicles, houses, porches, fences, or abandoned lots, that they use to protect their drug stash, drug proceeds, and commit or threaten violent assaults. The indictment charges numerous instances in which Weymouth DTO members possessed firearms either on the block or shortly after leaving the block. To name just a few examples: in January

2019, the DTO stored three loaded firearms inside 3125 Weymouth Street (ROMAN-MONTANEZ's residence); on August 27, 2019, defendant ANGEL RIOS-VALENTIN left the block with a loaded firearm—following a visit to 3152 Weymouth Street—and was convicted of a federal 922(g) offense; in December 2019, the DTO stashed a Hi-Point, Model 995 semiautomatic rifle, a Sig Sauer 9mm semiautomatic pistol, a Glock 26 9mm semiautomatic handgun, and a Keltec 9mm semiautomatic firearm, all inside of 3162 Weymouth Street;  on March 11, 2022, defendant ELLIOT MATTEI-RODRIGUEZ was found in possession of two loaded Glock firearms, shortly after he left 3152 Weymouth Street; on August 2, 2020, defendant ANGEMILL GONZALEZ-CLAUDIO, a/k/a "Angel," a/k/a "Angie," went up to a car on the 3100 block of Weymouth Street, opened the trunk, took out two bags that contained rifles visibly sticking out, and displayed one firearm to males on the street while depositing another firearm inside of a vehicle;  in October 2022, defendants ROMAN-MONTANEZ and NANCY RIOS-VALENTIN had four loaded firearms in their residence, of 3152 Weymouth Street, while other DTO members possessed a Draco AK 47, an AR-15, and another loaded handgun, in other locations; just recently on August 13, 2025, defendant LUIS LEVANTE-MEDINA, a/k/a "Diamante," tossed a firearm onto the street as he was trying to evade law enforcement.   Also on August 13, 2025, when the FBI and local police searched the DTO's "bunker" at 3153 Weymouth Street, they recovered numerous rounds of loose ammunition of various calibers, including AK 47 rounds.

       7.      In addition, Weymouth DTO members—in order to promote the reputation of the Weymouth DTO and chill potential enemies from encroaching on the DTO's turf—will frequently appear in rap videos and other posts uploaded to Youtube and Instagram, in which

they display firearms, use hand signs or flash insignias for the Weymouth DTO, and threaten acts

of violence against rivals.  Screenshots from some of these videos are below:

<u>"Patroncito"</u>



Shown above:  Screenshot from YouTube video entitled "Patroncito," uploaded November 1, 2023 by an unindicted co-conspirator (Co-Conspirator 11), in which Co-Conspirator 12 (whose alias was "Panza") appears brandishing a firearm, and Co-Conspirator 11 raps the lyrics, "I'll get you with Panza with Draco and you're stiff"

<u>"Philly Boy"</u>





Shown above:  Screenshots from YouTube video entitled "Philly Boy," uploaded April 19, 2024 by an unindicted co-conspirator (Co-Conspirator 13), filmed on the 3100 block of Weymouth Street, in which defendants ELLIOTT MATTEI-RODRIGUEZ, a/k/a "Elio," LUIS WILLIAMS, JOSE SANTANA-GONZALEZ, a/k/a "Chipi," a/k/a "Chepo," and JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appear next to individuals wielding firearms, making gestures of violence or gang affiliation, and walking through streets that neighbor the 3100 block of Weymouth Street

<u>"23"</u>



Shown above, screenshot from YouTube video entitled "23," uploaded May 18, 2024 by Co-Conspirator 11, in which defendant JOHN DAVID LOPEZ-BORIA, a/k/a "Grande," appears brandishing a firearm,  and in which LOPEZ-BORIA, Co-Conspirator 11, and others are shown holding stacks of drug proceeds on the 3100 block of Weymouth Street.  The lyrics rapped include, "You die today or you die today, I will make sure of it, They told me the facts, you're talking to DEA."

"Kaioken"



Shown above, screenshot from YouTube video entitled "Kaioken," uploaded January 16, 2025 by an unindicted co-conspirator, Co-Conspirator 17, in which Co-Conspirator is seen brandishing a handgun with an extended magazine on a stoop outside the "bunker" at 3153 Weymouth Street, and in which defendant JOHN DAVID LOPEZ BORIA, a/k/a "Grande" also appears.   In the video, Co-Conspirator 17 raps lyrics that include, "I don't talk, I get in and will come to hunt you, asshole."

8.    The Weymouth DTO is an organized drug operation with an established scheduled of "shifts" for caseworkers and street dealers.  The schedule is distributed by leaders of the Weymouth DTO, such as defendants RAMON ROMAN-MONTANEZ and NANCY RIOS-VALENTIN, and sets forth which member of the group will be working on a given day of the week and during what time block.  An example of the written schedule from May 2022, which was provided by defendant NANCY RIOS VALENIN to another co-conspirator in a text message, is shown below.



The evidence in this case includes 6 months of recordings from Title III wiretaps—on phones belonging to five different defendants in the indictment—which in turn demonstrates that the DTO continues to work in an organized, business-like fashion, assigning shifts to different DTO members, coordinating the delivery of new installments of fentanyl, cocaine and crack to the block on a regular basis, and  collecting and pooling proceeds from the sales of drugs so that they go back into a common pot.

9.      Given the drug weights involved, the violent nature of the group, and the sentencing exposure for all individual charged, the government is seeking the pretrial detention of nearly all 33 defendants listed in the indictment.   Every single one of these individuals was an

entrenched, committed member of the Weymouth DTO—with some defendants going back to

2016, 2017, and 2018, in terms of their activities on the 3100 block of Weymouth (defendants

JOSE ANTONIO MORALES NIEVES, ANGEL RIOS VALENTIN, RAMON ROMAN-

MONTANEZ, NANCY RIOS-VALENTIN, JAVIER RESTO-BERRIOS, CARLA DIAZ-

RESTO), others steadily working on the block since the 2020, 2021, and 2022 time frame

(defendants ANGEMILL GONZALEZ-CLAUDIO, ELLIOT MATTEI-RODRIGUEZ, KELVIN

AGUAYO-GARCIA), and even what-may-be newer members of the Weymouth DTO

demonstrating a steady record of involvement in the DTO at least for many months.

## II.    <u>LEGAL STANDARD</u>

Title 18 U.S.C. § 3142(g) sets forth the factors that this Court is to consider in

determining whether a person should be released or detained pending trial in a federal court.  In

summary, these factors are:

> 1) the nature and circumstances of the offenses charged;
> 2) the weight of the evidence against the defendant;
> 3) the history and characteristics of the defendant including-
>> a) employment history, financial resources, drug abuse, criminal history and
>> record pf appearance at court proceedings, and
>> b) whether he was on supervision at the time of his offenses or arrests or was on
>> release pending court proceedings;
> 4) the dangerousness to any person or the community.

18 U.S.C. § 3142(g).

The Bail Reform Act also provides that with respect to certain specified crimes, a

rebuttable presumption arises that a defendant is a risk of flight and that no condition or

combination of conditions will reasonably assure the safety of any other person and the

community, such that detention pending trial is presumed warranted.  18 U.S.C. § 3142(e).  One

of the crimes specified is a violation of the Controlled Substances Act for which the maximum

term of imprisonment is 10 years' or greater.  Specifically, Section 3142(e)(3) states:

> Subject to rebuttal…it shall be presumed that
> no condition or combination of conditions will
> reasonably assure the appearance of the person as
> required and the safety of the community
> if the judicial officer finds that there is
> probable cause to believe that the person
> committed:
>
> (A) an offense for which a maximum term
> of imprisonment of ten years or more is prescribed
> in the Controlled Substances Act (21 U.S.C. § 801
> et seq.)…
>
> (B) an offense under section 924(c) . . . of this title.

18 U.S.C. §§ 3142(e)(3)(A), (B).

Here, because the amount of fentanyl charged in Count One and attributable to defendant

is in excess of 400 grams, and the amount of crack cocaine charged in Count One and

attributable to the defendant is in excess of 280 grams, the maximum term of imprisonment the

defendant faces under the Controlled Substances Act is life imprisonment.  *See* 21 U.S.C.

841(a)(1), (b)(1)(A).  Accordingly, the presumption in favor of detention under the Bail Reform

Act is triggered in this case.

Where the presumption in favor of detention arises, a defendant must rebut the

presumption by presenting some credible evidence that he/she will not flee and does not pose a

threat to the community.  *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986).   In drug-

trafficking cases such as this, the presumption is difficult to overcome.  "The statutory language,

as well as the legislative history [of the Bail Reform Act], unequivocally establishes that

Congress intended to equate traffic in drugs with a danger to the community." *Strong,* 775 F.2d

at 506. Indeed, Congress and the Third Circuit have provided this guidance:

> The [Judiciary] Committee intends that the concern about safety be
> given a broader construction than merely danger of harm involving
> physical violence. ... **The Committee also emphasizes that the
> risk that a defendant will continue to engage in drug
> trafficking constitutes a danger to the "safety of any other
> person or the community."**

*Id.* at 507 (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 12-13) (emphasis in original). As the

Third Circuit has noted: "It is well known that drug trafficking is carried on to an unusual degree

by persons engaged in continuing patterns of criminal activity. Persons charged with major drug

felonies are often in the business of importing or distributing dangerous drugs, and, thus, because

of the nature of the criminal activity with which they are charged, they pose a significant risk of

pretrial recidivism." *Strong*, 775 F.2d at 507 (quoting S. Rep. No.225, 98th Cong., 1st Sess. 20);

*accord United States v. Cervantes,* 951 F.2d 859, 861 (7th Cir. 1992) (defendant involved in the

distribution of large quantities of drugs poses continuing danger to the community); *United

States v. Ramirez*, 843 F.2d 256, 258 (7th Cir. 1988) (same).

### III.    INDIVIDUALIZED ANALYSIS FOR THE DEFENDANT

Defendant RAMON ROMAN-MONTANEZ a/k/a "Viejo" cannot overcome the

presumption in favor of detention here. As discussed below, he demonstrates a serious danger to

the community if released as well as a risk of flight.

Specific Charges / Evidence Pertaining to the Defendant

Defendant ROMAN-MONTANEZ is charged in Count One, the conspiracy count, with a

drug weight attributable to him of 400 grams or more of fentanyl, 280 grams or more of crack

cocaine, and 500 grams or more of powder cocaine; in Counts Fourteen, Seventeen, and

Eighteen, with distributing fentanyl to confidential human sources on March 5, 2025 (approximately 7.67 grams), March 20, 2025 (approximately 7.75 grams), and March 29, 2025 (approximately 5.89 grams); in Count Thirty-Six, with possessing fentanyl and 28 grams or more of crack cocaine in his residence, 3152 Weymouth Street, on August 13, 2025; and in Count Thirty-Seven, with possessing fentanyl, 500 grams or more of cocaine, and 28 grams or more of crack cocaine, in the neighboring residence of 3150 Weymouth Street, on August 13, 2025. He is also charged in Count Count Forty-One, with conspiring with co-defendant NANCY RIOS-VALENTIN to sponsor, exhibit, and possess chickens and roosters for the purpose of displaying them in an animal-fighting venture.

Defendant ROMAN-MONTANEZ is a leader of the Weymouth DTO and has occupied a high-level leadership position in the group as far back as 2018. He lives on the block with his paramour, NANCY RIOS-VALENTIN—and has done so at least for seven years—and uses his house, as well as the unoccupied townhouse next door at 3150 Weymouth Street, to store days' worth amounts of fentanyl, crack, and powder cocaine for the DTO, so that it can be obtained by street-dealers as needed. He also stores large amounts of drug proceeds in his residence, which are then given to the DTO's suppliers, MORALES-NIEVES, and other parties. ROMAN-MONTANEZ keeps detailed ledgers of the DTO's business activities in his home; ledgers were found in 3152 Weymouth Street both in October 2022 and then again in August 2025, in which he and NANCY RIOS-VALENTIN logged the amounts of fentanyl and crack/cocaine sold by the DTO on each of the day's three main shifts, day after day, week after week. Photographs of the ledgers found on August 13, 2025, in ROMAN-MONTANEZ's residence, are below:









ROMAN-MONATENEZ exercises all the facets of leadership that one would expect from someone in his position.  He controls drug shifts on the block, coordinates with suppliers to bring more installments of fentanyl to the block, stays in touch with caseworkers and street-dealers throughout the day to determine when supplies are running low and when proceeds are ready to be collected, and at times, makes sales himself.    A call between ROMAN-MONTANEZ and AGUAYO-GARCIA on May 30, 2025, which was intercepted on the court-authorized wiretap on AGUAYO-GARCIA's line, illustrates ROMAN-MONTANEZ's position of leadership.   AGUAYO-GARCIA called ROMAN-MONTANEZ and asked who was supposed to be "on shift up the block."  ROMAN-MONTANEZ answered that he did not think it had been assigned.  AGUAYO-GARCIA and ROMAN-MONTANEZ discussed who might take

17

the shift, and ROMAN-MONTANEZ paused and considered various options.  At the end of the call, he decided that the shift should be given to "Chicken" (JAVIER RESTO-BERRIOS) and AUGAYO-GARCIA acknowledged.

ROMAN-MONTANEZ also, at times, participates in drug-sales on the block—particularly when a buyer is requesting a large amount of drugs.   In this investigation, he participated in three controlled buys, as shown below:



*Ramon in the bunker on 3/5/25 during buy of $1,100 worth of "RIFLAY" fentanyl (Count 14)*



*Ramon on 3/20/25, including with CHS in the bunker, for buy of $990 worth of "RIFLAY" fentanyl  (Count 17)*



*Ramon on 3/29/25, engaging with CHS, for sale of $825 worth of RIFLAY-fentanyl*

*(Count 18)*

On April 7, 2018, ROMAN-MONTANEZ's residence (of 3152 Weymouth Street) was searched by the Philadelphia Police Department, and found to contain 59 grams of fentanyl, 26 grams of cocaine, and $55,000 in drug proceeds.  On August 27, 2019, his co-defendant in this matter—ANGEL RIOS-VALENTIN (and brother of his paramour)—picked up a loaded firearm, namely a Polymer 80 Inc., Model PCF940, .40 caliber S&W—from ROMAN-MONTANEZ's house at 3152 Weymouth Street, left with the firearm in a satchel, and was arrested shortly thereafter with the firearm in his possession, for which ANGEL RIOS-VALENTIN was convicted of 922(g) offense.  On October 20, 2022, ROMAN-MONTANEZ's residence (of 3152 Weymouth Street) was again searched, and found to contain 96 grams of fentanyl, eight grams of fentanyl pills, $124,000 in drug proceeds, and four firearms, all of which were loaded.  And on August 13, 2025, his residence was searched, and found to contain six grams of fentanyl, 66 grams of crack, ledger sheets, and $24,000 in drug proceeds.

Criminal History

19

Defendant RAMON ROMAN-MONTANEZ has a prior conviction in the Philadelphia Court of Common Pleas for cruelty to animals (M2), from October 8, 2019, for which he was sentenced to 6-23 months' imprisonment followed by 12 months' probation. This means that the defendant was either on probation or that probation had recently expired when on October 20, 2022, as the result of a months' long investigation, the Philadelphia Police found the above-mentioned drugs and money in ROMAN-MONTANEZ's house at 3152 Weymouth Street. The 2022 case resulted in charges being dropped, but rather than use this as an opportunity to reform his ways and obtain gainful employment, ROMAN-MONTANEZ doubled down. He rose up even further in the ranks of the Weymouth DTO and became the daily operations manager for the block. On August 13, 2025, when law enforcement again searched his residence at 3152 Weymouth Street, they found fentanyl, crack, ledger sheets, and over $20,000 in drug proceeds. Defendant ROMAN-MONTANEZ was arrested by the Philadelphia Police Department that same day and charged with the drugs found in his house. A bail amount of $300,000 was set. The defendant was able to post bail on September 30, 2025. His local case remains open.

Flight Risk

Defendant ROMAN-MONTANEZ faces a 10-year mandatory minimum and a Guidelines range above that. Despite his long history of criminal involvement, the longest term of imprisonment he has faced to date has been 6-23 months in jail for his cruelty to animals conviction—a term far below the sentence he faces here. Meanwhile, ROMAN-MONTANEZ does not have any known employment in Philadelphia (besides overseeing the vast illegal drug-enterprise in this indictment) nor any significant local caretaking responsibilities known to the government that would overcome an incentive to depart the jurisdiction. He also has ties to Puerto Rico, as evident by arrests there from 2005 and 2007. ROMAN-MONTANEZ maintains

20

his contacts with Puerto Rico, where the ultimate boss of this DTO lives (MORALES-NIEVES). Earlier this month, after a fellow DTO member was murdered, ROMAN-MONTANEZ and other DTO members flew to Puerto Rico for the funeral.

ROMAN-MONTANEZ doesn't care about the law or any conditions of bail. For example, when one of ROMAN-MONTANEZ's runners (CARTAGENA) was arrested, ROMAN-MONTANEZ appears to have paid a lawyer to try to get CARTAGENA released from local custody (this effort did not succeed, as CARTEGENA remained detained locally until his transfer on the writ in this case). ROMAN-MONTANEZ also tried to orchestrate a way to pay CARTAGENA's bail. Something that ROMAN-MONTANEZ regularly coordinates with NANCY RIOS-VALENTIN. In a recorded call on June 2, 2025, AGUAYO-GARCIA discussed these facts and more with an incarcerated member of the DTO.

Additionally, recorded conversations also capture that ROMAN-MONTANEZ regularly paid lawyers on the DTO members behalf' to try to get them out. In one call, AGUAYO-GARCIA went on to tell these individuals that part of this money would be used to bribe AUSAs and Judges.

ROMAN-MONTANEZ also conspired to evade Nebbia orders imposed by the local courts. Nebbia orders are issued so that drug dealers can't pay other drug dealers bail with drug money. On a call on June 2, 2025, AGUAYO-GARCIA stated that ROMAN-MONTANEZ was going to pay CARTAGENA's bail but, "the money was deposited into the account, and they are just waiting a month so the judge doesn't say anything." CARTAGENA was arrested as part of a coordinated action in this case between the FBI and PPD and on April 17, 2025, a Nebbia order was placed on his case. As of the call on June 2, 2025, CARTAGENA had not made bail. It is clear that the DTO including ROMAN-MONTANEZ were attempting to find a way evade court

orders and pay CARTAGENA's bail with drug money, the only money ROMAN-MONTANEZ earned.

ROMAN-MONTANEZ also constantly spoke about evading law enforcement and hiding his criminal activity. For example, on May 31, 2025, he spoke with KELVIN AGUAYO-GARCIA on the phone, during which AGUAYO-GARCIA warned him "strike force" police being nearby, and telling ROMAN-MONTANEZ that he should make sure he did not have anything out and that he should lock the gate just in case.  On June 4, 2025, AGUAYO-GARCIA and ROMAN-MONTANEZ discussed moving "everything" and what a risk it would be because there were cops everywhere. On June 5, 2025, AGUAYO-GARCIA called ROMAN-MONTANEZ at 5:00 am because AGUAYO-GARCIA believed "SWAT" was going to conduct an operation that morning. Notably these defendants know that typically warrants cannot be executed before 6am. Further proof of this is that fact that AGUAYO-GARCIA himself left his residence before 6am the day of the takedown in this case on October 24, 2025 and was caught only after an extensive pursuit by law enforcement.

ROMAN-MONTANEZ has no respect for the law or any condition of probation or pretrial release. If released he will continue to attempt to evade law enforcement and try to flee to prevent being held accountable for his actions.

Danger to the Community

Defendant ROMAN-MONTANEZ presents a danger to the community that no conditions of pretrial release can sufficiently protect against.   He has operated as a leader of this DTO for years—which has in turn trafficked kilograms of fentanyl, cocaine, and crack cocaine in Philadelphia for close to a decade, and has repeatedly resorted to violence in order to promote the DTO's objectives.  ROMAN-MONTANEZ has been arrested by the Philadelphia Police

Department for storing significant quantities of drugs in his house on *three* occasions—in 2018, 2022, and most recently in August 2025.  In 2022, he also had four loaded firearms in his house. Other DTO members have been arrested with firearms on other occasions, shortly after leaving his residence. In short, the defendant has demonstrated himself to be a committed member of the Weymouth DTO since at least 2018 and has offered up his residence, of 3152 Weymouth Street, to essentially operate as an on-the-block stash house and hub of illegal activities for the DTO. The defendant cannot be trusted to abide by conditions of pretrial release.

Shockingly ROMAN-MONTANEZ only has the one conviction. But the pattern is clear. The defendant is arrested for drugs/guns, released, and continues to sell drugs and possess firearms. ROMAN-MONTANEZ knows how to do one thing and one thing only, sell drugs to hurt our community. He was the leader on the ground handling daily operations of this group. His release will subject the people of his neighborhood to further the plague of drug sales. As highlighted above, ROMAN-MONTANEZ was interested in selling as much drugs as possible and advocated for a stronger product even when explicitly warned that it would kill his customers.

On October 24, the day of the execution of multiple searches and arrests in this case, a firearm was found inside the residence directly next door to ROMAN-MONTANEZ and NANCY RIOS-VALENTIN's home, that being 3150 Weymouth Street. The FBI was going to breach the door of the house but decided to search 3152 Weymouth Street (ROMAN-MONTANEZ's home) before doing so, to see if there was a key.   Indeed, the police did find a key on the porch of 3152 Weymouth Street, and it opened the lock on the door to 3150 Weymouth Street.   In turn, inside, the FBI found a Glock model 27 semi-automatic pistol. After ROMAN-MONTANEZ made bail in late September in his local case—flowing from his

arrest on August 13, 2025—and was released, he almost certainly would have been told that he could not possess a firearm in his home while he was on pretrial supervision.   To get around that likely probation-condition, he kept a firearm in the residence next door.  This was also the residence were RIOS-VALENTIN and ROMAN-MONTANEZ kept their birds for the fighting venture up until the search on August 13, 2025.

Finally, no condition will keep the community safe from this defendant as the defendant lives on the 3100 block of Weymouth Street and conducted much of the charged activity feet from his house or from within it. If the Court releases ROMAN-MONTANEZ 3100 Weymouth will be back open for business and the community will again suffer.

## IV.    <u>CONCLUSION</u>

When all of these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of defendant as required and/or the safety of the community and the confidential sources in this case.  WHEREFORE, the government respectfully submits that the Government's Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


 <u>/s/ Sara A. Solow</u>
SARA A. SOLOW
JASON D. GRENELL
Assistant United States Attorney

Dated:  October 26, 2025

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the Government's Motion for Pretrial Detention was

served by electronic mail, on the following defense counsel:


Lawrence Bozzelli
bozzelli.law@gmail.com



*/s/ Sara A. Solow*
SARA A. SOLOW
Assistant United States Attorney



Date:   October 26, 2025

1